CARSTENS PACKING CO. v. GODO.

(Circuit Court of Appeals, Ninth Circuit.  October 6, 1913.)

No. 2,253.

MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLI-
GENCE.

Plaintiff, a carpenter employed in defendant's meat establishment, built on pilings over tide flats, was ordered to go underneath the glue house to take certain measurements.  He proceeded to remove a plank from the flooring above the place where the measurements were to be made, but was directed by the foreman to go underneath the wharf.  He did so taking a route between two elevator guides, which extended below the floor into the mud, and while there was struck by the descent of the counterweights and injured.  The way between the guides was marked by planks laid underneath the wharf, and if he had gone any other way it would have been necessary to wade through mud and filth, which was from ankle to hip deep, to arrive at the point where the measurements were to be taken.  For five years prior to the week before the accident the counterweights had stopped above the first floor, but the week prior to the accident the cable holding the counterweights had broken, and in repairing the same the coil had been unwound from the drum so that thereafter the weights went below the first floor and almost to the mud, but plaintiff was not shown to have had knowledge of this.  *Held,* that he was not negligent as a matter of law in traveling the route between the weight guides.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132;  Dec. Dig. § 289.*]

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; E. E. Cushman, Judge.

Action by Louis Godo against the Carstens Packing Company. Judgment for plaintiff, and defendant brings error.  Affirmed.

The defendant in error was a carpenter and millwright, and he had been working for the plaintiff in error in and about its meat-packing establishment for about seven years.  The packing house was built upon piling on the tide flats at Tacoma.  Underneath the lowest floor of that portion of the establishment, which was known as the glue house, was an inclosed space in which the floor stood about four feet from the mud.  In the northwest corner of that building was an elevator running from the lowest floor to the fifth.  The counterweights by which the elevator was operated traveled in guides which extended from the fifth floor down through the lowest floor and into the mud. But from the time when the elevator was installed five years before, and up to six or eight days prior to the accident to the defendant in error, the length of the cable was such that the counterweights had never passed below the lowest floor.  The defendant in error was well aware of that fact.  About a month before the accident, he had been working beneath the lowest floor, assisting in building a concrete foundation for a wringer.  On the day when he was injured, he was directed by the foreman to take a measurement from the outer wall of the glue house to a pile beyond.  He testified that he was proceeding to remove a plank from the flooring above the place where the measurement was to be made, when the foreman directed him to desist, and told him to go beneath the wharf.  There was no way by which he could get beneath the wharf, and no other way by which he could take the measurement, than by going through the inclosed space beneath the glue house.  He took a measuring pole, a hammer, a chisel, and a candle, and went into that inclosed space, and in crossing it he took his route between the two elevator

guides. The evidence indicates two reasons why he went that way: One was that some planks had been placed in that track, and had been used a short time before when the elevator cable had broken, and the counterweights had been precipitated to the bottom. Another was that, in order to avoid passing between the guides, it would have been necessary to deviate a distance of 15 or 20 feet to get around an obstruction, and to wade through mud and filth from the glue factory, which stood from ankle deep to hip deep, in order to arrive at the point where the measurement was to be taken. About a week before that date, the cable holding the counterweights had broken near the weights, and in repairing the same, one coil of the cable had been unwound from the drum, so that thereafter the counterweights, instead of stopping above the lowest floor, as they had done for five years, now went through and below the same, and almost to the mud. As the defendant in error was passing on his way between the guides, where he paused crouching to light a candle, the counterweights descended and struck him, and seriously injured him. For that injury he recovered a judgment in the court below.

John D. Fletcher and Robt. E. Evans, both of Tacoma, Wash. (C. F. Wilt, of Tacoma, Wash., of counsel), for plaintiff in error.

Govnor Teats, Hugo Metzler, Leo Teats, and Ralph Teats, all of Tacoma, Wash., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The contention of the plaintiff in error is that the court below erred in denying, at the close of the testimony, its motion for an instructed verdict in its favor. The assignment raises the question whether or not there is any evidence in the record to sustain the verdict, and not the question which is discussed in the brief of the plaintiff in error, whether the evidence is sufficient to justify the verdict. It is urged, and it may be said that there is force in the argument, that the defendant in error was not directed to go to the particular place where he went, and that in passing between the elevator guides he unnecessarily exposed himself to danger. But, on the other hand, it is to be considered that the foreman knew, or should have known, that having refused to permit the defendant in error to remove the plank above the place where the measurement was to be made, the only other way to approach it was to go underneath the glue house, and that an employé in passing underneath would probably take the route which the defendant in error took. It was the direct way. It is fairly inferable from the testimony that it was a way marked by planks upon which to walk, planks which had been used there for that purpose, and left there at the time when the elevator cable was repaired. To have gone any other way would have required the defendant in error to wade through mud and filth. The defendant in error did not know that the cable had been lengthened, and he had no reason to apprehend danger from the counterweights, unless he was put upon notice of danger from his knowledge of the fact that shortly before the accident the elevator cable had been broken and had been repaired. We do not think that it should be held that the breaking and the repairing of the elevator shaft imported notice to him that the cable was lengthened, or that thereafter the counterweights would extend below the place where they had halted during the operation of the elevator for the

prior five years. The most that can be said is that the question so presented is one upon which the minds of reasonable men might differ. If so, it was a proper question to be submitted to the jury. It is not established by the evidence that the danger was obvious, or known, or ought to have been known, by the defendant in error. His employer had taken the precaution to box in the space between the guides in which the elevator weights ran in the rooms above the lowest floor. Probably there was no occasion to observe a similar precaution in the space beneath the floors, but all the employés who had occasion to go there for any purpose connected with their duties were entitled to notice that the condition which had existed for so many years was now changed, and that the counterweights in their travel now went below the lowest floor.

We find no error. The judgment is affirmed.